**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| RYAN EARHART, CARA EARHART, KATHRYN DUKE MCGOWAN,CHRISTIN BURCH ADDISON, ELEANOR MARGARET HAEG, SALLY PETH,GRAHAM SMITH, CARPER FAMILY REVOCABLE TRUST, CHRISTY CARPER, MICHAEL CARPER, BAND TF, LLC, TONY FULTON, BRIGITA FULTON,JULIE BELL LINDSAY, ANN ADDLESTONE APPLE, JOSEPH A. NOVAK, SHANNON M. NOVAK, STEPHEN MURRAY, CARMELO BUCCAFURRI, AND HALL R. EASTON, | C/A No. 2:25-cv-05121-DCN |
| Plaintiffs, | **ORDER** |
| vs. | |
| CITY OF CHARLESTON, | |
| Defendant. | |

The following matter is before the court on plaintiffs Ryan Earhart, Cara Earhart, Kathryn Duke McGowan, Christian Burch Addison, Eleanor Margaret Haeg, Sally Peth, Graham Smith, Carper Family Revocable Trust, Christy Carper, Michael Carper, B and TF, LLC, Tony Fulton, Brigita Fulton, Julie Bell Lindsay, Ann Addlestone Apple, Joseph A. Novak, Shannon M. Novak, Stephen Murray, Carmelo Buccafurri, and Hall R. Easton's (collectively, "Plaintiffs") motion for preliminary injunctive relief, ECF No. 6, against defendant City of Charleston (the "City"). For the reasons set forth below, the court denies the motion.

1

## I.  BACKGROUND

The Dockside Tower ("Tower") is an eighteen-story condominium building constructed in 1974.  ECF No. 10-1 at 21.  The Dockside Townhouses ("Townhouses" or "Townhomes") are constructed directly on the one-story raised concrete deck surrounding the Dockside Tower.  ECF No. 10 at 1.  The Tower and Townhouses are administered by the non-profit Dockside Association ("Association").  ECF No. 6-1 at 6.

On February 25, 2025, Ralf Leistikow ("Leistikow") of Wiss, Janney, Elstner Associates, Inc. ("WJE"), an engineering firm hired by the Association, evaluated the integrity of the structural columns and related as-built elevated concrete slabs at the Tower.  ECF No. 10-1 at 9.  In its evaluation, WJE indicated that the "[Tower] has insufficient [load] capacity to continue to be safely occupied."  Id. at 12.  On February 26, 2025, the Dockside Association sent WJE's evaluation to the City.  ECF No. 10 at 2.  After consulting with the Association, Leistikow, and other City employees, Ken Granata ("Granata") made the decision as the Chief Building Official of Charleston to issue an emergency Order to Vacate (the "Order") on February 27, 2025.  Id.  The Order required that the Tower and Townhouses be vacated by 5:00 p.m. on February 28, 2025, and remain empty until further notice by the City.  Id.  Granata issued the Order under the authority of Section 116 of the 2021 South Carolina Building Code, and Sections 115 and 116 of the International Existing Building Code, all of which have been adopted by the City of Charleston.  Id.

On May 5, 2025, the Association and several residents (Earhart, McGowan, and Fulton) appealed Granata's Order to the Building Codes Board of Appeals ("BCBA").[1]

---

[1] Not all plaintiffs filed an appeal with the Building Codes Board of Appeals. ECF No. 6-1 at 12 .

ECF No. 6-1 at 12.  Following the hearing, the BCBA denied the appeal and issued a written resolution to that effect on May 19, 2025.  Id. at 14.  On June 3, 2025, plaintiffs filed the current action in state court, and, in turn, the City  removed the action to federal court.  ECF No. 10 at 3.  On June 23, 2025, plaintiffs filed their motion for preliminary injunctive relief, asking the court to restrict the City's ability to enforce its Order and allow them free access to their Townhomes.  ECF No. 6.  On July 7, 2025, the City responded in opposition.  ECF No. 10. On July 14, 2025, plaintiffs filed a reply to the City's response.  ECF No. 14.  A hearing was held on August 11, 2025.  ECF No. 21.  As such, plaintiffs' motion for preliminary injunctive relief is fully briefed and ripe for the court's review.

## II.  STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions.  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)), modified in part, 906 F. Supp. 2d 463 (D.S.C. 2012), aff'd, 720 F.3d 518 (4th Cir. 2013).  The party seeking a preliminary injunction must make a "clear showing" that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm, (3) the balance of hardships tips in its favor, and (4) the injunction is in the public interest.  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008).  To succeed, the movant must satisfy all four of the Winter factors.  Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), vacated and remanded, 559 U.S. 1089 (2010), reissued in relevant part by per curiam published order, 607 F.3d 355 (4th Cir. 2010).  When the government is the opposing party

the final two factors—the balance of equities and weighing the public interest—merge into one element. Nken v. Holder, 556 U.S. 418, 435 (2009). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24.

"A preliminary injunction may be characterized as being either prohibitory or mandatory." League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 235 (4th Cir. 2014). Mandatory relief is "disfavored, and warranted only in the most extraordinary circumstances." S.C. Progressive Network Educ. Fund v. Andino, 493 F. Supp. 3d 460, 466 (D.S.C. 2020) (quoting Taylor v. Freeman, 34 F.3d 266, 270 n.2 (4th Cir. 1994)). "Mandatory preliminary injunctions . . . should be granted only in those circumstances when the exigencies of the situation demand such relief." Pierce v. N.C. State Bd. of Elections, 97 F.4th 194, 209 (4th Cir. 2024) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)).

### III.  DISCUSSION

To succeed on a motion for a preliminary injunction against the City, plaintiffs must show that they are likely to succeed on the merits; they would suffer irreparable harm without an injunction; and the balance of equities and the public interest weigh in favor of the plaintiffs. Winter, 555 U.S. at 7, 20, 22.

Plaintiffs assert that the City did not provide sufficient notice or a pre-deprivation hearing, violating their rights to procedural due process, substantive due process, and equal protection under the Fourteenth Amendment. See generally Compl. The City argues that the notice given and the post-deprivation hearing process provided by the City's Building Code is sufficient in an emergency situation like the one here. ECF No. 10 at 8. To

determine if a preliminary injunction is warranted here, the court will address plaintiffs' claims under the three <u>Winter</u> factors.

### A. Likelihood of Success on the Merits

The first <u>Winter</u> factor requires the court to assess whether plaintiffs are "likely to succeed on the merits." 555 U.S. at 20. Plaintiffs argue that they are likely to succeed on the merits of their claims for violations of procedural due process, substantive due process, and equal protection. ECF No. 6-1 at 16. The court will address each claim separately.

### 1. Plaintiff's Procedural Due Process Claim

To succeed on a procedural due process claim, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." <u>Kendall v. Balcerzak</u>, 650 F.3d 515, 528 (4th Cir. 2011). Procedural due process requires both "fair notice of impending state action and an opportunity to be heard." <u>Snider Int'l Corp. v. Town of Forest Heights, Md.</u>, 739 F.3d 140, 146 (4th Cir. 2014). "Notice and the hearing are two distinct features of due process." <u>Id.</u>

Procedural due process is not violated when the deprivation occurs, but when the government fails to provide due process. <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990). "Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." <u>Id.</u> Notice and an opportunity to be heard must be given "at a meaningful time and in a meaningful manner," although in "extraordinary situations" the provision of notice and a hearing may be postponed until after the deprivation has occurred. <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80, 90 (1972). Such extraordinary situations must meet three criteria: (1) the seizure must be directly necessary to secure an important governmental or general public

interest; (2) there must be a special need for very prompt action; and (3) the person initiating the seizure must be a government official responsible for determining, under the standards of a narrowly drawn statute, that seizure is necessary and justified in the particular instance. Id. at 91.

For purposes of this motion for a preliminary injunction, with regard to the first and second factors, the court assumes that plaintiffs had a property interest in their residences and that the Order to Vacate constitutes a deprivation. Therefore, the critical questions are (1) whether plaintiffs received sufficient notice of the Order to Vacate and (2) whether the post-deprivation hearing was constitutionally adequate due process.

The City argues that the situation at Dockside is an extraordinary circumstance. ECF No. 10 at 6. According to the engineering report provided to the City and the Association, the Tower is at risk of collapsing floor by floor, pancaking each concrete slab floor into the next resulting in a catastrophic failure of the Tower. ECF No. 10-1 at ¶ 10. A related concern is that the collapsing Tower would impact the raised concrete deck that supports both the Tower and the Townhouses. ECF No. 10 at 16. The deck, not being designed to support the impact, would collapse, leading to the destruction of the Townhomes or, at the least, "significant damage to the Townhomes and injury or death to the persons inhabiting the Townhomes." ECF No. 10-1 at 5.

This situation clearly meets the requirements for an "extraordinary situation." First, the seizure was directly necessary to "secure an important governmental or general public interest"; protecting the lives of its citizens is a core governmental interest.[2] Second, there

---

[2] Other courts have found that when such exigent circumstances exist, "tenants can be evicted from a building reasonably judged to be unfit for human occupancy without a pre-deprivation hearing." Grayden v. Rhodes, 345 F.3d 1225, 1237 (11th Cir. 2003). See,

was a special need for very prompt action. ECF No. 10-1 at 12. Third, the person initiating the seizure was the government official responsible for determining that seizure is necessary; the Chief Building Official of the City who made the determination falls plainly within this definition. Id. Further, at the hearing, the parties agreed this was an extraordinary situation. ECF No. 21. Having established that an "extraordinary situation" existed, the court returns to whether plaintiffs can show that the twenty-four-hour notice and post-deprivation opportunities to be heard were constitutionally inadequate.

Proper notice is "an elementary and fundamental requirement of due process," and must be reasonably calculated to convey information concerning a deprivation. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Notice satisfies due process where it either "is in itself reasonably certain to inform those affected" or "where conditions do not reasonably permit such notice…the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." Mullane, 339 U.S. at 315. Plaintiffs do not deny that they received the notice from the City, satisfying that the notice informed those affected. ECF No. 10 at 8. Rather, plaintiffs argue that the timing of the notice was insufficient, with the City giving them twenty-four hours to vacate the Townhomes. ECF No. 6-1 at 18.

---

e.g., Flatford v. City of Monroe, 17 F.3d 162, 167–168 (6th Cir. 1994) ("Protecting citizens from an immediate risk of serious bodily harm falls squarely within those 'extraordinary situations'.... [W]here the need to protect lives is the basis for [an emergency eviction], government officials should not be made to hesitate in performing their duties, particularly where [post-deprivation] remedies can immediately correct any errors in judgment."); Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1307 (4th Cir. 1992) (holding that "in the absence of exigent circumstances, the Due Process Clause of the Fifth Amendment requires the government to provide for notice and an opportunity to be heard before a tenant may be evicted").

The City maintains that based on the structural engineer's opinions about the potentially life-threatening situation, it acted properly in making the urgent decision to require the Tower to be vacated by 5:00 p.m. on February 28, 2025. See, ECF No. 10-1, Granata Aff., ¶ 4. The Order was also made applicable to the Townhouses as they are part of the Dockside complex and are constructed directly on the one-story raised concrete deck. ECF No. 10 at 6.

Plaintiffs have alleged that the post-deprivation hearing violated their right to procedural due process and their right to be heard. ECF No. 6-1 at 19. In this case, several Dockside residents as well as the Association filed appeals, which were heard by the BCBA on May 5, 2025. ECF No. 10 at 8. Most of the plaintiffs, however, did not file an appeal. Id. Further, the plaintiffs who appealed to the BCBA also had the right to appeal to the state circuit court from the denial of relief by the BCBA.[3] None of the plaintiffs, however, have exhausted those appeal rights where they would have been permitted to raise the same issues raised in this case. ECF No. 10 at 9. This circuit has held that, "no § 1983 procedural due process violation exists when a party fails to exhaust both administrative and state court remedies that the government affords to them." Rockville Cars, Inc. v. City of Rockville, Md., 891 F.3d 141, 149 (4th Cir. 2018). As such, plaintiffs were provided with an opportunity to be heard.

---

[3] South Carolina statutory law provides for appellate rights to the circuit court from decisions by boards of appeals, planning commissions, boards of architectural review, and in this instance, the building codes board of appeals. By way of example, in Spartanburg County Building Codes Board of Appeals v. Lancaster, 2004 WL 6248983, (S.C. Ct. App. 2004) (unpublished), the South Carolina Court of Appeals affirmed the circuit court's denial of a property owner's appeal from the decision of a building codes board of appeals. Later, this court applied Younger abstention when the property owner filed a § 1983 action in this Court. See, Lancaster v. Spartanburg County Building Codes Board of Appeals, 370 F.Supp.2d 404 (D.S.C. 2005).

Having found that exigent circumstances exist, the court concludes that the twenty-four-hour notice to vacate was "fair notice" and that the post deprivation hearing was "constitutionally adequate." Snider Int'l Corp, 739 F.3d at 146 Zinermon, 494 U.S. at 126. Plaintiffs were provided with due process, both a pre-deprivation notice and a post-deprivation opportunity to be heard and have yet to exhaust the administrative and state court remedies afforded to them. ECF No. 10 at 9. The court agrees that "[t]he City acted rationally due to the need to protect lives on the Dockside complex." See Granata Aff., ¶ 12. Therefore, plaintiffs cannot show a likelihood of success on the merits on their procedural due process claim.

### 2. Plaintiff's Substantive Due Process Claim

To prevail on a substantive due process claim, plaintiffs must prove the following three elements: "(1) that [they] had property or a property interest; (2) that the state deprived [them] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 827 (4th Cir. 1995) (emphasis in original).

This circuit has described this as "a high bar, and an action is illegitimate only if the alleged purpose behind the state action has no conceivable rational relationship to the exercise of the state's traditional police power through zoning." Quinn v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., 862 F.3d 433, 443 (4th Cir. 2017). This circuit has further commented that "[t]he protection of substantive due process is indeed narrow and covers only state action which is so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-

deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Sylvia Dev. , 48 F.3d at 827.

The court finds that plaintiffs are not likely to succeed in proving this claim. As previously discussed, the situation at the Tower and Townhomes is an emergency scenario involving imminent danger. ECF No. 10-1 at 9. The court finds that the City was rational in acting under its authority as articulated in Section 116.1 of the 2021 International Existing Building Code. ECF No. 10-1 at 17. Further, the City acted rationally as it responded quickly to the danger identified by the structural engineer, and expanded the Order to the Townhomes, as they shared a foundation with the Tower and thus were also in danger. Quinn, 862 F.3d at 443. The City was justified in serving the governmental interest of protecting the public, as lives were at stake, demonstrated by the City's reasoning in making the Order to Vacate applicable to the plaintiffs' townhomes:

> The City's concerns as to the Townhomes at Dockside relate to the likelihood of a progressive failure of the Dockside Tower and the "pancaking" as one floor collapses onto the floor below resulting in a widespread and catastrophic failure of the Tower. The Townhomes at Dockside are all constructed directly on the one-story raised concrete deck with parking underneath surrounding the Dockside Tower which would be catastrophically impacted by any collapse of the Dockside Tower. The concern is that the debris from the collapsing Tower will fall onto the raised concrete deck, which is not designed to support the additional load from such debris nor the impact dynamic load and energy that would result from collapse of the Tower. Because the raised concrete deck serves as the foundation for each of the Townhomes, the collapse of the raised concrete deck would likely result in the collapse and destruction of the Townhomes or at least significant damage to the Townhomes and injury or death to the persons inhabiting the Townhomes.

Granata Aff., ¶

Thus, plaintiffs are not able to show that "the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency."

Sylvia, 48 F.3d at 827. As such, the court finds plaintiffs have not met the high bar before them and have not demonstrated a substantial likelihood of success on the merits of their substantive due process claim.

### 3. Plaintiff's Equal Protection Claim

The Equal Protection Clause "requires that the states apply each law, within its scope, equally to persons similarly situated, and that any differences of application must be justified by the law's purpose. But this does not mean that persons in different circumstances cannot be treated differently under the law." Sylvia Dev., 48 F.3d at 818. When a party has not alleged that it was deprived of a fundamental right or that it was subjected to discrimination based on a suspect classification, a court "will uphold the distinctions drawn by [the defendant] if they were 'rationally related to a legitimate state interest.'" Pulte Home Corp. v. Montgomery Cnty., 909 F.3d 685, 693 (4th Cir. 2018). "Under this standard, a government entity need not actually articulate at any time the purpose or rationale supporting its classification, and it is not required to produce evidence showing the rationality of its classification." Id. (citing Heller v. Doe, 509 U.S. 312, 320 (1993)). "Choices like those challenged here are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." Id. (citing FCC v. Beach Commc'ns , Inc., 508 U.S. 307, 315 (1993)). Here, the building official's decision "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Pulte, 969 F.2d at 693.

"To prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." Sylvia Dev., 48 F.3d at 819. "The unlawful administration by state officers of a

state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination." Id. (citing to Snowden v. Hughes, 321 U.S. 1, 8 (1944) (emphasis in original)). "When there is no explicit favoring of one class or person over another on the face of the statute or administrative action in question, 'the plaintiff bears the initial burden of proving that a classification was nonetheless intentionally utilized.'" Adams v. Village of Wesley Chapel, 2006 WL 2689376, at *5 (W.D.N.C. Sep. 18, 2006) (citing Sylvia Dev., 48 F.3d at 819).

Plaintiffs do not allege an infringement of a fundamental right or assert a suspect classification. The court finds that under the holdings of Sylvia Dev. and Snowden, plaintiffs have neither stated nor demonstrated an equal protection claim. 48 F.3d at 819; 321 U.S. at 8.

Plaintiffs maintain that they are asserting a "class of one" equal protection claim. ECF No. 6-1 at 21. "Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "Similarly situated" means that the comparators are "in all relevant aspects alike" to the plaintiff. Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Plaintiffs have pointed to the International African American Museum and the City of Charleston Pump Station on Concord Street. ECF No. 6-1 at 24. The court finds that those structures are not appropriate comparators for the Townhomes. As explained before, because "collapse of the Tower would be a "pancaking" of the floors onto each other, the potential for damage beyond the

12

Dockside property is deemed unlikely or minimal based on present information, and those structures are not constructed on the raised concrete deck at the base of the Dockside Tower, as are the Townhouses at Dockside, which is why the other structures differ from the Townhomes with respect to the decisions made by the City." See Granata Aff., ¶ 11. As such, it was rational for the City to treat the Townhomes, which share a foundation with the Tower, differently than the surrounding buildings that do not.

The court finds that plaintiffs cannot sustain their burden of proof on their equal protection claim. They have not demonstrated that they were treated differently by the City from other property owners with whom they are similarly situated or that there was unequal treatment that was the result of intentional or purposeful discrimination. They have not shown a comparator that was treated more favorably than they were, as no other building is as likely as the Townhomes to be impacted, as no other building is connected structurally. As such, because the buildings plaintiffs point to, such as the International African American Museum, are not similarly situated, they may be treated differently under the law. Sylvia Dev., 48 F.3d at 818. The decision made to evacuate was rationally related to a legitimate governmental interest, protecting the lives of its citizens. Pulte, 909 F.3d at 693. The court finds the building official's decision to evacuate was rational, and thus "must be upheld against [an] equal protection challenge." Id. As such, plaintiffs have not shown a substantial likelihood of success on the merits of their equal protection claim.

Because the plaintiffs are not likely to succeed on the merits of any of their claims, the court need not turn to the remaining Winter factors.[4]

---

[4] On the remaining two factors, irreparable injury and balance of equities, the Plaintiffs are not likely to succeed. To succeed on the irreparable injury factor, "[a] plaintiff must overcome the presumption that a preliminary injunction will not issue when

13

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** plaintiffs' motion for a

preliminary injunction.

AND IT IS SO ORDERED.

_____
David C. Norton
United States District Judge

September 10, 2025
Charleston, South Carolina

---

the harm suffered can be remedied by money damages at the time of judgment." <u>Di Biase</u> <u>v. SPX Corp.</u>, 872 F.3d 224, 230 (4th Cir. 2017).  Further, plaintiffs still have the state court remedies before them.  On the balance of equities factor, actions taken by the City pursuant to its police powers are rational and appropriate under applicable law and are intended not to harm the plaintiffs but rather to protect the general public, including the plaintiffs themselves and their guests and invitees, from the imminent danger of which the structural engineer retained by the plaintiffs' own homeowners association warned in WGE's evaluation.

14